IVERSON et al. v. CARRINGTON et al.

No. 3740.    Decided April 14, 1922.    (206 Pac. 707.)

1. TRIAL—ISSUES ARISING OUT OF CONTRACT FOR FEEDING OF STOCK HELD IMPROPERLY WITHDRAWN FROM JURY. In an action to recover compensation for feeding and caring for cattle, in which

defendants interposed a counterclaim for damage to the cattle by insufficient feeding, there being a conflict in the evidence as to whether plaintiffs fully complied with the contract, and there being evidence tending to show that defendants waived performance with respect to the feeding of hay to the cattle, it was error for the court to instruct the jury that the plaintiffs had admitted nonperformance of the contract, and that there was no evidence of waiver by defendants.

2. ANIMALS—RIGHT TO REIMBURSEMENT FOR FEED PURCHASED HELD PROPERLY SUBMITTED TO JURY. Where plaintiffs agreed to care for and feed defendants' cattle and to feed hay during certain parts of the year, whether plaintiffs were entitled to recover from defendants for certain corn and syrup fed to the cattle at defendants' request when the cattle were found in an emaciated and starving condition *held* properly submitted to the jury.

3. ANIMALS—CONTRACT TO FEED CATTLE CONSTRUED AS TO CHARACTER OF FEED. A contract by plaintiffs to feed defendants cattle on plaintiffs' land, known as Locomotive Springs, "with the class of hay as can be found on Locomotive Springs," *held* not to be construed as relieving the plaintiffs of the duty to feed the cattle hay, unless the hay in question was on plaintiffs' premises.

Appeal from District Court, First District, Box Elder County; *A. A. Law,* Judge.

Action by Alma Iverson and another against Calvin Carrington and others. Judgment for plaintiffs in part and for defendants in part, and against defendants on their counterclaim, and both parties appeal.

REVERSED and remanded in part, and AFFIRMED in part.

*Young & Davis,* of Brigham City, for appellants.

*Henderson & Johnson,* of Ogden, for respondents.

CORFMAN, C. J.

This was an action brought by the plaintiffs to recover balances alleged to be due them for feeding the defendants'

cattle. It is in substance alleged by the complaint, for a first cause of action, that on or about November 19, 1919, the plaintiffs and the defendants entered into a written agreement whereby plaintiffs agreed to feed for the defendants 408 head of cattle at the rate of $2.50 per head per month for yearlings and $2.75 per head per month for all other cattle delivered during the months of December, 1919, and January, February, and March, 1920; that on or about January 4, 1920, a second agreement was entered into between the parties, whereby plaintiffs were to feed the additional number of 80 head of cattle during the months of January, February, and March, 1920, for the sum of $3 per head per month for 35 head and $2 per head per month for the balance; that the said cattle were delivered to the plaintiffs for feeding under the provisions and according to the terms of said agreements respectively, and thereafter said cattle intermingled and were fed and cared for by the plaintiffs as one bunch or herd of cattle; that the 408 head of cattle were fed by plaintiffs from November 19, 1919, to January 4, 1920, when said additional number of 80 head were received, and thereafter the total number of 488 head were fed and cared for from January 4, 1920, until February 28, 1920, at which time defendants removed from plaintiffs' possession 381 head; that plaintiffs thereafter fed the remainder of said cattle, 107 head, until March 3, 1920, when, with defendants' consent, plaintiffs removed 76 head, after which plaintiffs continued to feed the remainder of said cattle until March 10, 1920, at which time the remainder of the cattle were removed by defendants; that defendants became indebted to the plaintiffs, for the feeding of said cattle as aforesaid in the total sum of $3,753.10, no part of which has been paid except the sum of $2,588.50, leaving a balance due and unpaid of $1,164.50, for which amount plaintiffs prayed judgment, with interest and costs of suit. For a second cause of action it is alleged that plaintiffs furnished corn and syrup at the instance and request of defendants of the value of $205.40, in addition to the amount due under the terms of the agreements mentioned in the plaintiffs' first cause of action; that defendants have not paid the plaintiffs

said sum, for which judgment was also prayed, with interest and costs.

The answer of the defendants admitted the agreements mentioned in the complaint had been entered into for the feeding of their cattle upon the terms stated in the complaint and payment to the plaintiffs of the sum of $2,588.50 for the feeding of the cattle. It is then alleged that under said agreements plaintiffs were to feed the cattle hay, which plaintiffs failed and neglected to do until January 3, 1920, but, to the contrary, pastured said cattle upon the very poorest of grass until January 3, 1920; that thereafter plaintiffs failed to feed sufficient hay, by reason of all of which 150 head of said cattle died from lack of feed and from starvation, and the balance became poor and emaciated, so that defendants had to receive them from plaintiffs' possession. As a further defense, and by way of a counterclaim, defendants affirmatively alleged substantially the same facts with respect to plaintiffs' failure and neglect to feed hay as pleaded in their answer, and that by reason of such failure and neglect they sustained damages in the sum of $10,000, for which judgment was prayed against the plaintiffs. As to plaintiffs' second cause of action, the defendants denied generally the allegations thereof.

Plaintiffs filed a reply to the answer and counterclaim, in effect denying that under the terms of the agreements entered into they were to feed any hay until the weather became cold and stormy, about January, 1920, and alleged that until said time the cattle were properly pastured and remained in good condition; that the losses sustained by defendants were not occasioned by the neglect or failure of the plaintiffs, but by reason of extreme cold weather; that defendants were advised and had knowledge that their cattle were being pastured and approved of plaintiffs' doing so up to the time they were fed with hay.

Trial to a jury upon the issues thus framed by the pleadings resulted in verdicts as follows: On the first cause of action stated in plaintiffs' complaint, by direction of the court, no cause of action; on plaintiffs' second cause of action the

sum of $205.40, with interest; on defendants' counterclaim, no cause of action. Judgments on the verdicts were entered accordingly. Plaintiffs moved for a new trial on the first cause of action, defendants for a new trial on plaintiffs' second cause of action, and also upon their counterclaim for damages. Both motions were denied. All parties appeal.

Plaintiffs' appeal is predicated on alleged errors committed by the trial court with respect to their first cause of action alone, in that the court refused to charge the jury as requested by them, in the giving of certain other instructions and in denying their motion for a new trial. Defendants assail certain instructions given by the trial court with respect to plaintiffs' second cause of action, and also in failing to direct the jury to bring in a verdict against the plaintiffs on their counterclaim for damages.

The evidence in part shows that the plaintiffs were possessed of certain hay and pasture lands bordering on the shores of Great Salt Lake in Box Elder county. These lands are watered by natural springs, called "Locomotive Springs," which arise in the vicinity of and flow over plaintiffs' lands, upon which are growing numerous kinds of wild grasses. In the summer of 1919 a considerable portion of the grasses were cut and stacked for hay, and upon a part of the lands the growth was not cut, but left standing. The hay cut and stacked was of an inferior quality. On the 19th day of November, 1919, after the defendants had examined the kind of hay that had been cut and stacked upon the premises, a written contract was entered into between the parties whereby the plaintiffs undertook and agreed to "feed and care [for] as well as can consistently be expected with the class of hay as can be found on Locomotive Springs" 408 head of cattle at stipulated prices. Said contract also contained the provisions:

"That the party of the first part [plaintiffs] accounts for all cattle received; that the party of the first part under this contract shall not be held responsible for conditions over which he has no control, death and disease, accidents from storm, etc.; * * * that all time before December 1, 1919, and after March 31, 1920, the party of the second part agrees to pay for the pasturing and herding" of the 408 head at a stipulated price.

January 4, 1920, the parties entered into a contract containing like provisions with respect to an additional number of 80 head of cattle to be fed and cared for at a stipulated price per head per month. The plaintiffs received the first bunch of cattle, 408 head, in November, 1919, and from that time until in the fore part of January, 1920, the cattle were pastured on the standing grasses without being fed any hay from the stacks. Shortly before the plaintiffs received the 80 head of cattle in January they commenced feeding hay. After receiving the last-mentioned number in January the two bunches of cattle were cared for as one herd, and all the cattle were thenceforth fed with the hay that had been cut and stacked upon the plaintiffs' lands. The evidence shows that about the time the second bunch of cattle was delivered to plaintiffs by the defendants they suggested to the plaintiffs that the cattle were not being fed enough hay, and that they "had better take out another wagon so that we (plaintiffs) could give them more hay." The evidence further shows that about this time some of the cattle were weakening. Wallace Ricks, one of the defendants, testified:

"I told them [plaintiffs] that my cattle looked pretty bad; that I would rather pay extra and get the feed out to them, corn, or anything else, extra. My cattle had fallen off. I gave them $30.00 to send out the corn. The whole herd had lost flesh."

The same witness testified:

"I was down the latter part of February. We just moved about 76. Left the remainder; the cows and the cattle that were too weak to move we left. They had a hard time getting out of the swamp. They would lie down, and then we would have to lift them up."

Another witness testified to the same effect with respect to the weakened condition of the cattle. During the month of January the cattle commenced to die in considerable numbers. In February defendants began removing cattle from plaintiffs' possession from time to time, and continued to do so until March 10th, when all of the cattle remaining alive had been taken away to be fed and cared for elsewhere. Large numbers had died while in plaintiffs' possession, and many died after being taken away.

The evidence is in conflict as to what caused the heavy

losses. Some of the witnesses attribute the losses to the fact that cattle ''had been starved the forepart of the winter.'' Bert Eliason, a witness in defendants' behalf, who owned land and had fed cattle in the vicinity where the defendants' cattle were being fed and cared for, testified that when the cattle were received by plaintiffs they were ''strong and hearty,'' and that when they were taken away they were ''awful poor.'' This witness also attributed the heavy losses and the weakened condition of the cattle in part to their not being fed with hay earlier in the season. J. S. Showell, also a witness for the defendants, who had cared for cattle in the same vicinity or locality for 12 or 15 years last past, testified that the cattle were in good condition when received by the plaintiffs, and that they were ''extremely thin'' when taken away. As to the cause of the cattle failing in strength he expressed it as his opinion:

"I think they were not put on feed soon enough. They were left out to pasture too long in the field."

He also testified that if they had been put on hay and had been fed properly on the kind of hay plaintiffs had to feed them they would have been in better condition. There is also much evidence in the record tending to show that owing to the severe cold and weather conditions of the season of 1919-20, many other cattle in the same locality where the cattle in question were fed became weakened and died.

We have made no endeavor to set forth even in substance all the material evidence that appears in the record, but only so much thereof, as will show that there was some substantial evidence tending to support each and all of the issues raised by the complaint and answer, not only with respect to plaintiffs' second cause of action and the defendants' counterclaim, but also with respect to plaintiffs' first cause of action. With respect to plaintiffs' first cause of action the trial court directed the jury to return a verdict against them, no cause of action, apparently upon the theory that the plaintiffs had breached their contract in failing to feed the cattle hay as contemplated and agreed upon by the parties to the contracts. While it is an admitted fact that the first contract entered

into between the parties was not complied with by reason of
the plaintiffs' failing to feed hay to the cattle before January,
1920, nevertheless, matters were pleaded by the plaintiffs,
and there is some substantial evidence in the record tending
to show that the defendants by their acts and conduct waived
the feeding of hay to their cattle until in January, 1920, when
the plaintiffs did commence to feed hay. Under our rules of
procedure it is provided by Comp. Laws Utah 1917, § 6802,
subd. 4, that—

"When the evidence is concluded the court shall instruct the
jury in writing upon the law applicable to the case." *In re Hanson's
Will,* 50 Utah, 207, 167 Pac. 256.

The trial court did not comply with the foregoing rule with
respect to the issues raised by the pleadings in this case.
Practically every material issue raised by the allegations of
plaintiffs' first cause of action and the answer and counter-
claim was taken away from the jury by the following instruc-
tion, of which the plaintiffs complain:

"You are instructed  *  *  *  that the plaintiffs' right to recover
on their first cause of action is based upon the terms of the written
contracts, and it is incumbent upon the plaintiffs as a prerequisite
to recovery to prove by a preponderance of the evidence that they
substantially performed their said contracts, or that the perform-
ance of the contracts had been waived by defendants, and in this
connection you are further instructed that it is admitted by plain-
tiffs that said contracts, and in particular the contract dated No-
vember 19, 1919, was not performed, and there has been no evidence
introduced in this case sufficient to justify a finding that defendants
waived the failure to perform, and therefore the plaintiffs are not
entitled to recover upon their first cause of action, set forth in plain-
tiffs' complaint, and the same is withdrawn from the consideration
of the jury, and you are directed to return a verdict in favor of the
defendants and against the plaintiffs on said cause of action."

As we have pointed out, in the trial of the case testimony
was received tending to support the allegations of the plain-
tiffs' first cause of action. Indeed the evidence shows that
the issues raised by plaintiffs' first cause of action and
the defendants' answer and counterclaim thereto were
gone into most thoroughly. It follows that the giving
of the foregoing instruction by the trial court withdrawing
the matters testified to with respect to plaintiffs' first alleged

cause of action from the jury's consideration was prejudicial error. Therefore the judgment of the district court entered upon the verdict with respect to said cause should be reversed upon that ground if upon none other.

Plaintiffs have assigned other alleged errors as grounds for reversal of the judgment with respect to their first cause of action. We need not consider them. What has been said with respect to the duty of the trial court at the conclusion of the evidence to charge upon all the material issues of the case applies to them.

Coming now to the questions raised by the defendants' appeal: It is first contended by them that the trial court erred in charging the jury:

"If you find from the evidence that the plaintiffs purchased corn and syrup, at the instance and request of the defendants, or either of them, to be fed the same cattle, or any of them, and if you further find that defendants promised to pay for said corn and syrup, if any, then your verdict must be in favor of the plaintiffs and against the defendants upon the plaintiffs', second cause of action for the amount of said corn and syrup so purchased and furnished, if any, not exceeding the sum of $205.40."

Clearly, one of the issues raised by the pleadings in the case was whether or not the plaintiffs should be permitted to recover the value of the corn and syrup fed to defendants' cattle. There is substantial evidence in the record to sustain the finding or verdict of the jury that the corn and syrup were provided for the cattle by the plaintiffs at the instance and request of the defendant, and that defendants promised and agreed to pay for the same. Therefore the judgment entered upon that verdict of the jury should not be disturbed.

The defendants further complain of the following charge given by the court to the jury:

"It was also the duty of the plaintiffs during all the time the said cattle were in their possession during the months of December, January, and February to feed and care for said cattle as well as they consistently and reasonably could with the class of hay they had upon their premises at Locomotive Springs."

The plaintiffs point out that the contracts between the

plaintiffs and defendants with regard to the care and feeding of the cattle provided that—

"The party of the first part [plaintiffs] agrees to feed and care as well as can consistently be expected with the class of hay as can be found on Locomotive Springs."

Defendants contend, and we think rightfully, that the instruction as given by the court materially departed from the express words and meaning of the contracts between the parties, by limiting the hay to be fed under the contract to that found on plaintiffs' premises, and that defendants were prejudiced thereby. The wording of the contracts should have been correctly stated by the court. If then the facts disclosed by the evidence warrants the court may charge the jury as to what was contemplated by the parties in the use of the contract language.

Defendants also contend that the trial court erred in not instructing the jury to bring in a verdict for the defendants upon their counterclaim; there being an admitted failure to feed hay as called for by the contracts. It would seem that if the plaintiffs breached their contracts in that regard as the trial court held they did do, then the defendants were entitled to recover on their counterclaim at least nominal damages, and the court should have so charged the jury.

Manifestly, under the pleadings and the evidence this case was not properly submitted to the jury for their consideration. The court should have charged the jury with respect to the questions raised by the plaintiffs' first cause of action and the defendants' answer and counterclaim thereto. In view of the fact that the court refused to permit the jury to pass upon the issues raised by the plaintiffs' first cause of action, the jury may have arrived at the erroneous conception that the defendants should not be permitted to recover any damages sustained by them by reason of the alleged failure of the plaintiffs to properly care for and feed their cattle as provided in the contracts, and thus they may have totally disregarded the consideration of the counterclaim upon its merits. It is therefore ordered that the judgments entered upon the plaintiffs' first cause of action, and the defendants'

Appeal from Third District

answer and counterclaim be, and the same are hereby, re-versed. As to the judgment entered against the defendants on plaintiffs' second cause of action, that will stand affirmed. Let the cause be remanded to the district court of Box Elder county, with directions that the plaintiffs be granted a new trial upon their first cause of action, and that defendants be granted a new trial upon their answer and counterclaim thereto. Neither party to recover costs.

WEBER, GIDEON, THURMAN, and FRICK, JJ., concur.